# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NOHELIA M. CASTILLO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:17-cv-01810-PX |
| JOANN URQUHART, M.D., P.C., *et al.*, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Pending before the Court are Defendants' Motion for Summary Judgment (ECF No. 67) and Plaintiff's Cross-Motion for Partial Summary Judgment. ECF No. 70. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' motion is GRANTED, and Plaintiff's motion is GRANTED in part and DENIED in part.

### I. Background

From August 2012 through May 2017, Plaintiff Nohelia Castillo was employed as a Medical Assistant ("MA") by Defendant Joann Urquhart, M.D., P.C., and the private cardiology practice of Defendant Dr. Joann Urquhart. ECF No. 67-4 at 2. As one of two MAs in the office, Castillo's duties included taking patient vitals, assisting with stress tests, triaging patients in the office, making referrals, communicating with insurance providers, answering the phone, and filing patient charts. *Id.*; ECF No. 67-3 at 17–22 (Castillo Dep.). Castillo was also responsible for training new MAs about Dr. Urquhart's preferences and procedures. ECF No. 67-3 at 10–11; ECF No. 67-7 at 3, 6. Defendants paid Castillo 20 dollars per hour when she joined the practice in 2012 and increased her pay annually by one dollar an hour. ECF No. 67-6 at 13 (Urquhart Dep.).

During Castillo's employment, the office was generally open from 8:00 a.m. to 4:30 p.m.

Monday through Friday. ECF No. 67-3 at 6. Castillo was not required to punch in and out during the work day, and Defendants did not keep records of the hours that she worked. ECF No. 67-6 at 15–16. According to Castillo, she regularly worked nine to nine-and-a-half hours a day, totaling roughly 47 hours per week. ECF No. 67-3 at 8. Castillo asserts she would arrive to work by 7:45 a.m. at the latest and often leave around 5:45 p.m. ECF No. 70-6 at 5–6. Further, Castillo did not take a lunch break. *Id.* at 7.

Defendants contend, however, that while Castillo may have been in the office before and after hours, she worked from 8:00 a.m. to 4:30 p.m. Defendants further do not seriously dispute that Castillo skipped lunch, but maintain that she took other breaks in the afternoon to pick up lunch and make personal calls which equated to her half-hour lunch break. ECF No. 67-3 at 26, 30–31. Further, the staff, including Castillo, often worked shortened days when Dr. Urquhart was out of town, ECF No. 67-3 at 23–24, and on the occasion where staff had to stay late to handle a medical emergency, Urquhart would ensure they would leave early another day to make up for that time. ECF No. 67-6 at 13; ECF No. 67-7 at 8.

By May of 2017, Dr. Urquhart sensed that Castillo no longer enjoyed her job. Urquhart also concluded that Castillo "was not performing her tasks the way she should have." ECF No. 67-6 at 12. Ultimately, on May 8, 2017, Dr. Urquhart terminated Castillo. *Id.*

After Castillo was fired, she retained counsel to pursue claims against Defendants for unpaid wages. On June 9, 2017, Castillo, through her attorney, Michael Amster, demanded from Defendants $114,073 for unpaid overtime wages and seven days of accrued vacation time, plus treble damages and attorneys' fees. ECF No. 70-13 at 2. Dr. Urquhart, in response called Amster on June 13, 2017. ECF No. 70-14 at 4; ECF No. 67-6 at 14. According to Amster, Dr. Urquhart threatened that if Castillo pursued her wage litigation, Urquhart would sue her and

Amster "for libel and slander."  Urquhart further warned that she would "make sure that [Castillo] never worked around here again."  ECF No. 70-14 at 4 (Amster Dep.).  Urquhart maintains that she made no threats but rather stated, "Oh, my God.  She won't get a job if she sues me."  ECF No. 67-6 at 14.  About a week after the call, Dr. Urquhart wrote a check to Castillo for five unpaid vacation days.  ECF No. 67-19 at 3.

On June 30, 2017, Castillo filed this action against Defendants, asserting overtime wage violations of the Fair Labor Standards Act ("FLSA") and Maryland Wage and Hour Law ("MWHL"), as well as unpaid vacation time under the Maryland Wage Payment and Collection Law ("MWPCL").  ECF No. 1.  In response, on September 11, 2017, Defendant Joann Urquhart, M.D., P.C. (the "Practice") filed two counterclaims against Castillo, alleging breach of fiduciary duty and constructive fraud.  ECF No. 4 at 11–12.  In support of constructive fraud claim, the Practice alleges that Castillo submitted a letter to immigration officials purportedly signed by Dr. Urquhart without Urquhart's knowledge or consent.  *Id.* at 10.  Castillo moved to dismiss the counterclaims for lack of subject matter jurisdiction, which the Court granted as to Count II, the constructive fraud claim.  ECF Nos. 5, 16.  Castillo amended the Complaint to add two counts of unlawful retaliation, in violation of the FLSA and MWHL, based on the Practice's counterclaims.  ECF No. 17 at 8–10.

After the Court dismissed the Practice's constructive fraud counterclaim, Defendants refiled the claim in the Circuit Court for Montgomery County.  *See* ECF No. 70-15.  Defendants also added the claim for invasion of privacy based on Castillo's misappropriation of Dr. Urquhart's name in the immigration letter.  ECF No. 70-16 at 8–9.  On July 17, 2018, Castillo sought to amend her Complaint again to augment her retaliation as based on the Practice's state court suit, which this Court granted.  ECF No. 35 at 9–11.

Defendants now move for summary judgment on all of Castillo's claims. ECF No. 67 at 1–2. Castillo, in turn, cross-moves for partial summary judgment on several of her claims as well as the remaining counterclaim. ECF No. 70 at 1–2.

**II.     Standard of Review**

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The parties cross-move for summary judgment as to Plaintiff's claims for unpaid overtime wages and accrued vacation leave. When faced with cross-motions for summary

judgment, the Court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted). The Court must deny both motions if it finds a genuine issue of material fact precludes resolution, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (4th ed. 2019).

### III. Discussion

#### A. Castillo's Affidavit

As a threshold matter, Defendants move to strike Castillo's affidavit submitted as part of the record evidence. ECF No. 74 at 6; *see also* ECF No. 73-1. Defendants contend that much of the affidavit amounts to legal conclusions or contradicts Castillo's deposition testimony. ECF No. 74 at 7. Castillo disagrees, maintaining that the paragraphs Defendants describe as conclusory, such as the statement that Castillo did not exercise "supervisory authority over other employees" (ECF No. 73-1 ¶ 4), are either statements of fact or are supported by facts elsewhere in the affidavit. ECF No. 77 at 15–16. Castillo further addresses the specific paragraphs noted as contradictory, asserting her affidavit is consistent with her prior deposition testimony. *Id.* at 17–18.

"[A] plaintiff cannot contradict their deposition testimony and, thus, create a dispute of fact in the face of a summary judgment motion through their own self-serving affidavit." *Godbolt v. Trinity Prot. Servs., Inc.*, No. GJH-14-3546, 2017 WL 2579020, at *1 n.2 (D. Md. June 12, 2017); *see also Jones v. Puffenbarger*, No. CCB-15-3137, 2017 WL 1020819, at *15 (D. Md. Mar. 15, 2017) (citing *National Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir.

5

2000)) ("A plaintiff's self-serving affidavit is not sufficient to withstand summary judgment."). While parts of the affidavit are certainly conclusory, the Court agrees with Castillo that Defendants take some of her deposition testimony out of context. However, to the extent Castillo's affidavit contradicts her prior testimony or provides no more than a legal conclusion, such evidence cannot create a genuine issue of fact to survive summary judgment. Although the Court will not strike the affidavit in total, it likewise will not consider those portions which clearly contradict Castillo's deposition testimony or otherwise espouse purely legal conclusions.

### B. Overtime Claims (Counts I and II)

In Counts I and II, Castillo asserts claims for unpaid overtime wages under the FLSA and MWHL, maintaining that she routinely worked 47 hours per week for three years prior to her termination on May 5, 2017. ECF No. 35 ¶¶ 30, 36. The FLSA requires employers to pay non-exempt employees overtime pay of at least one and one-half times the regular wage for hours worked that exceed 40 hours per week. 29 U.S.C. § 207(a). Certain employees are exempt from the FLSA's overtime requirement, including those "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

Defendants move for summary judgment on Castillo's overtime claims, asserting that, even if Castillo was not an exempt employee, she has failed to generate sufficient evidence to sustain the claim. ECF No. 67-1 at 16. Viewing the evidence in the light most favorable to Castillo, the Court finds that Castillo has failed to present sufficient evidence of uncompensated overtime work.

It is undisputed that Defendants did not keep regular records of Castillo's hours worked. ECF No. 67-6 at 15–16. Where an "employer's records are inaccurate or inadequate," the employee carries her burden by (1) proving she performed work for which she was improperly

6

compensated; and (2) producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). If the employee produces sufficient evidence, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687–88. This framework ensures the employee is not "penalize[d]" for being "unable to prove the precise extent of uncompensated work." Id. at 687.

Although Castillo broadly asserts in her affidavit that she "customarily worked" over 40 hours per week, ECF No. 73-1 ¶ 11, the evidence, including Castillo's own testimony, belies this assertion. Although, Castillo testified that she arrived by 7:45 a.m. most days, left around 5:45 p.m., and often did not take a full break for lunch, when pressed, Castillo wavered as to how she could begin working at 7:45 when the office did not open until at 8:00 a.m. ECF No. 67-3 at 22. Castillo also disavowed seeking overtime compensation for her "before work" early arrival and testified that she almost always met her coworkers in the parking lot and walked with them to the office between 7:35 and 7:45 a.m. ECF No. 67-3 at 13–14, 22. Castillo further testified that she would leave the office to buy lunch at least once a week, and her phone records also demonstrate that she took personal calls during work hours. ECF No. 67-3 at 23, 26. Thus, Castillo's evidence of overtime work rests heavily on work performed after the office closed at 4:30 p.m.

On this point, Castillo testified that, after 4:30 p.m., she was "probably" filing charts and faxing paperwork. ECF No. 67-3 at 25 ("I was probably filing, I was probably pulling the charts, faxing."). As evidence to support her "probable" work, Castillo has presented records showing that she entered prescriptions into Defendants' system after the office closed 22 separate occasions in one year. *See* ECF No. 71-2. However, several of those days occurred in the same

7

time frame that Castillo also came in late or left early without having to use vacation time for those missed hours.  Further, many of the dates in which Castillo stayed late to enter prescriptions reflect her working only less than ten minutes after 4:30.  In fact, Castillo can identify a handful of days out of the year where she stayed past 5:00 p.m. entering prescriptions, and never once do the records reflect her working until 5:45 p.m.  ECF No. 77 at 2–3.

This record viewed most favorably to Castillo does not allow a rational trier of fact to conclude that regularly, during a three-year period, Castillo worked an hour and half overtime per day, as she claims.  She has, at best, demonstrated occasional uncompensated overtime, which alone does not allow a "just and reasonable inference" that she worked such overtime regularly for three years.  Castillo's broad assertion in her affidavit that she "customarily worked approximately" 47 hours per week (ECF No. 73-1 ¶¶ 11–12), without more, amounts to a legal conclusion couched as fact, and so, cannot be considered as evidence in support of her claim.  The only remaining evidence is Castillo's vague contention that her overtime "depend[ed] on the day" and "on the week," and that she could not say with any certainty how frequently she worked more than eight hours every day, only that she did so routinely.  ECF No. 67-3 at 8.

While the burden shifting framework "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty," *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988), plaintiffs cannot meet their burden through "speculation," *McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 738 (D. Md. 2005), aff'd, 247 F. App'x 430 (4th Cir. 2007).  At best, a reasonable fact finder is indeed left to speculate as to what overtime, if any, Castillo would be owed.  Aside from a handful of prescription entries, no other records of any kind – patient appointment logs, calendar entries, fax records – support that Castillo regularly worked beyond 4:30 p.m.  Thus, even viewing the record most favorably to Castillo, she has failed to

sustain her burden.

Alternatively, viewing the evidence most favorably to Castillo, Defendants have marshalled sufficient evidence to demonstrate that Castillo routinely ended her day at 4:30. The other office employees testified that they, including Castillo, customarily ended the workday at 4:30 and left the office together. ECF No. 67-7 at 5,7; No. 67-8 at 7. The employees further corroborated that employees stayed after 4:30 only in emergencies and left early on days when Dr. Urquhart was not in the office. Castillo's cell phone records also show that she made lengthy personal phone calls between 4:30 and 5:45 p.m. ECF No. 67-10. Accordingly, when considering the record evidence most favorably to Castillo, her overtime claims cannot survive challenge.

Castillo, moreover, cannot demonstrate that even if she were working overtime, Defendants knew it. To be liable for overtime wages pursuant to the FLSA, "an employer must have 'knowledge, either actual or constructive of [that] overtime work.'" *Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 803 (D. Md. 2014) (quoting *Bailey v. Cty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996)). "[E]vidence of occasional after-hours work is not sufficient to raise a genuine dispute of material fact that the employer was on notice of the employee's consistent overtime work for a long period of time." *Id.*

Based on the record evidence, construed most favorably to Castillo, nothing supports that Defendants knew she was working the hours that she maintains were "overtime." *Id.* Neither Castillo's coworkers nor Urquhart testified to ever having witnessed Castillo work after hours absent the rare occasion when a patient procedure unexpectedly extended beyond 4:30. An office calendar for the relevant years, on which the officer manager kept rudimentary timekeeping notes, does capture employees' late arrivals and early departures, and at least once

notes that Castillo began work early, but never once were Castillo's overtime hours recorded. ECF No. 67-15. Nor do any of the email correspondence corroborate that Castillo worked after 4:30 p.m. Consequently, even if the Court assumes Castillo could marshal sufficient evidence to support that she worked overtime, no evidence exists that Defendants knew it. Summary judgment is granted as to Counts I and II.[1]

### A. Unused Vacation Days (Count III)

The parties also cross-move for summary judgment on Count III, Castillo's claim for seven days of unused vacation leave under the MWPCL. ECF No. 35 ¶ 44. The parties agree that Castillo received 15 vacation days for the year on the anniversary date of her employment with the practice, August 20, 2016. ECF No. 67-8 at 3–4; ECF No. 70-7 at 4. They further agree that Castillo had used eight days of vacation by her last day of work in May 2017. *See* ECF No. 67-15 at 22–30. The parties dispute, however, how many days of unused vacation pay to which Castillo was entitled upon termination.

The MWPCL requires employers to pay "all wages due for work that the employee performed" prior to termination (Md. Code Ann., Lab. & Empl. § 3-505(a)), which includes "earned and unused vacation days." *Skripchenko v. VIRxSYS Corp.*, No. TDC-13-0004, 2014 WL 4826788, at *4 (D. Md. Sept. 26, 2014). The law does not require employers to pay accrued leave if:

(1) the employer has a written policy that limits the compensation of accrued leave to employees;

---

[1] Because summary judgment is granted in Defendants' favor on Counts I and II, the Court need not reach whether Castillo's position was exempted from the wage and hour requirements under either the FLSA or the MWHPL. *Lane v. Sys. Application & Techs., Inc.*, No. DKC-13-3566, 2015 WL 1013449, at *6 (D. Md. Mar. 6, 2015) (citing Md. Code Regs. 09.12.41.01); *see also* Md. Code Ann., Lab. & Empl. § 3-403(a)(1). If the Court were to reach this defense, however, it would have denied summary judgment as to whether Castillo's "primary duty" as a medical assistant was non-manual work "directly related to the management or general business operations of the employer;" and "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). The Court also need not reach Castillo's motion for summary judgment on liquidated damages related to Counts I and II.

10

> (2) the employer notified the employee of the employer's leave benefits in
> accordance with § 3-504(a)(1) of this subtitle; and
> (3) the employee is not entitled to payment for accrued leave at termination under
> the terms of the employer's written policy.

Id. § 3-505(b). Defendants concede they do not "maintain a written policy regarding vacation leave." ECF No. 67-11 ¶ 3. The relevant question, therefore, is how many days of vacation leave Castillo had accrued prior to her termination date.

Defendants argue that Castillo had only accrued 10 of her 15 vacation days by her termination, as she only completed two-thirds of the work year based on her hire anniversary date. ECF No. 67-1 at 22. Wendi Dobson, the employee responsible for keeping track of the staff's vacation time, testified that employees who have been with the practice for over a year receive 15 vacation days on their work anniversary. ECF No. 67-8 at 3–4. Dobson further testified that, when an employee leaves the practice, Defendants prorate the amount of vacation time based on how many months have passed since the employee's anniversary date "to determine how much time they have earned." ECF No. 67-11 ¶ 8.

Castillo contends she had accrued all 15 vacation days, evidenced by Urquhart and Dobson's testimony that employees "receive[d]" their vacation days on the anniversary date of their employment. ECF No. 67-8 at 3–4; ECF No. 70-7 at 4. Castillo further asserts that the Defendants' calculation of accrued days is contradicted by how Castillo used her vacation days in fact. ECF No. 70-1 at 22. In August of 2016, Castillo used five vacation days in the first week after her anniversary date. ECF No. 70-9 at 9. Castillo argues that, under Defendants' reasoning, this time off would have been impossible as she would not have accrued those vacation days immediately after her anniversary date.

Defendants respond that it is "common practice among employers to allow employees to *use* vacation time they have not yet earned." ECF No. 74 at 21. Moreover, Defendants explain

11

that Castillo's position would produce an "illogical" result: an employee who quits on the first day of work would be entitled to all vacation days for the year. *Id.* at 22.

Based on the text of the MWPCL, which requires employer to pay "all wages due for work that the employee *performed* before" termination, the Court agrees with Defendants. Md. Code Ann., Lab. & Empl. § 3-505(a) (emphasis added). Castillo is entitled to the unused vacation days she had "earned" by her termination date, which Defendants properly calculated by pro rating her annual vacation time. *See Giddens v. CorePartners, Inc.*, No. JKB-10-3357, 2011 WL 2934855, at *11 (D. Md. July 18, 2011) (finding that employee who received vacation days "on their date of hire anniversary" was "entitled only to the unpaid vacation leave she accrued—on an incremental, pro rata basis—up through the date of her termination"). Accordingly, the Court grants summary judgment in favor of Defendants as to their calculation of Castillo's earned and unused vacation time under the MWPCL. Castillo's cross-motion is thus denied.

The Court cannot ascertain from the record, however, whether Castillo has already been paid for her unused vacation time.[2] Within fourteen days from the date of this Opinion and accompanying order, the parties shall submit a joint status report informing the Court as to their respective positions on what, if any payment, Castillo has received for unused vacation and whether any further proceedings are necessary to resolve this aspect of her claim.

### B. Retaliation Claim (Count IV)

Defendants also move for summary judgment with respect to Count IV, Castillo's retaliation claim under the FLSA.[3] Castillo contends that her termination violated the FLSA

---

[2] In June of 2017, Defendants sent Castillo a check for five unused vacation days and stated she was not entitled to seven days. ECF No. 67-19 at 2–3. Castillo maintains that she never cashed the check. ECF No. 70-1 at 21 n.3.

[3] In Castillo's cross-motion, she "withdraws Count V of the Second Amended Complaint for retaliation."

anti-retaliation provision which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related" to the FLSA. 29 U.S.C. § 215(a)(3). The provision is to be interpreted with its remedial purpose in mind; that it is designed to remove "fear of economic retaliation so that employees need not quietly . . . accept substandard conditions." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (internal citations and quotation marks omitted).

Courts review the sufficiency of an FLSA retaliation claim under the same *McDonnell Douglas* framework applicable to Title VII retaliation actions. *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 778 (D. Md. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Darveau*, 515 F.3d at 342. Castillo must first establish a prima facie case that (1) she engaged in a protected activity; (2) Defendants took adverse action against her; and (3) a causal link exists between the two. *Darveau*, 515 F.3d at 340. If Castillo establishes a prima facie case, "the burden shifts to [Defendants] to articulate a legitimate, non-retaliatory reason for the adverse action." *Mould*, 37 F. Supp. 3d at 779 (citing *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002)). If the Defendant articulates such a legitimate reason, the burden shifts back to Castillo to raise a genuine dispute as to whether the proffered reason is mere pretext for retaliation. *Id.*

Defendants specifically contend that Castillo has not established a prima facie case because she has not generated sufficient evidence to show Defendants took adverse action against her. ECF No. 67-1 at 23–24. Castillo responds that the Defendants' pursuing a breach of fiduciary duty counterclaim and separately suing Castillo for constructive fraud in Montgomery

---

ECF No. 70-1 at 8 n.1.

13

County Circuit Court constitute adverse actions. ECF No. 70-1 at 32–33. An adverse action is any conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Darveau*, 515 F.3d at 343 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). A lawsuit filed by an employer can constitute an adverse action where the employer pursued the claim "with a retaliatory motive *and* without a reasonable basis in fact or law." *Id.* (emphasis added). Importantly, only lawsuits that are "baseless in fact or law" may support a retaliation claim, for baseless suits are those which do not implicate the claimant's right to petition a court for its own redress of grievances. *Id.* at 341 (citing favorably and summarizing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 528–37 (2002)).

Beginning with the state court action, Defendants contend that because it proceeded to trial in Circuit Court, it cannot, as a matter of law, ever be considered baseless in law or fact. The constructive fraud claim is premised on Defendants' allegation that Castillo drafted and signed a letter, purportedly from Dr. Urquhart, in support of her husband's immigration case. ECF No. 70-16 ¶¶ 34–36. Dr. Urquhart denies ever giving consent for the drafting and signing of such a letter, while Castillo maintains she was acting with Dr. Urquhart's permission. Further, it is undisputed that the matter proceeded to trial and a jury ultimately ruled in Castillo's favor. ECF No. 78 at 2; ECF No. 82 at 2.

In light of the state case proceeding to trial, the claim was indisputably grounded in fact and law. The trial judge denied summary judgment which demonstrates that the claim was grounded in law and that disputes of fact required final resolution. *Munroe v. PartsBase, Inc.*, No. 08-80431-CIV, 2009 WL 413721, at *9 (S.D. Fla. Feb. 18, 2009) (counterclaims were not baseless where court "concluded that genuine issues of material fact exist"). Thus, summary judgment must be granted as to the retaliation claim based on the state court matter.

14

The Practice's counterclaim in this suit, however, requires a different analysis. Castillo moves for summary judgment on the breach of fiduciary duty counterclaim, and likewise urges the Court to allow that her retaliation claim proceed for similar reasons. ECF No. 70-1 at 26–27. As to Castillo's summary judgment motion, the Court agrees that the breach of fiduciary duty counterclaim cannot survive challenge. But the Court cannot agree that granting summary judgment in her favor on the counterclaim renders it so baseless in law or fact sufficient to support the retaliation claim. The Court first addresses the sufficiency of the Defendants' counterclaim and next turns to Castillo's retaliation claim.

i. **Breach of Fiduciary Duty Counterclaim**

Maryland law does not provide a "universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Kann v. Kann*, 344 Md. 689, 713 (1997). However a cause of action for such breach may proceed if the claimant can "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem." *Id.*

Here, Defendants identify the specific fiduciary relationship where implicitly "an employee must act solely for the benefit of his employer in all matters within the scope of his employment." *Quality Sys., Inc. v. Warman*, 132 F. Supp. 2d 349, 354 (D. Md. 2001) (citing *Md. Metals v. Metzner*, 282 Md. 31, 38 (1978)); *see also Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 727 (D. Md. 2018) (recognizing employee's duty of loyalty as cause of action); *McGovern v. Deutsche Post Glob. Mail, Ltd.*, No. JFM-04-0060, 2004 WL 1764088, at *13 (D. Md. Aug. 4, 2004) (same). The Practice next contends that Castillo breached this duty of loyalty by using office resources to further her side business in construction (ECF No. 67-17 at 5), and on a single occasion signing Dr. Urquhart's name to a request for medical records on behalf of a

15

family member and without Urquhart's knowledge. *Id.* at 6. The Practice contends that because Castillo was hired to assist Dr. Urquhart attending critically ill patients, and in keeping Dr. Urquhart's patient confidences, Castillo's diversion of office resources and misuse of Urquhart's identity suffices to support the claim.

The Court recognizes that breaches of loyalty generally arise when an employee attempts to steal an employer's customer base, competes unfairly with the employer or discloses confidential and proprietary information to a competitor. *See Quality Sys., Inc.*, 132 F. Supp. 2d at 354; *Adobe Sys. Inc.*, 300 F. Supp. 3d at 727; *MacDonald v. Patriot, LLC*, No. 450, Sept. Term, 2016, 2017 WL 1788115, at *10 (Md. Ct. Spec. App. May 5, 2017) (under this duty, a "high-echelon employee is barred from actively competing with his employer during the tenure of his employment") (citation omitted), *cert. denied*, 455 Md. 448 (2017). However, breaches of the duty of loyalty are not exclusively confined to these situations. The Practice, in this respect, has identified a fiduciary duty which has been breached.

Fatal to the claim, however, is the Practice's failure to articulate the particular remedy for which the claim must necessarily proceed. In Maryland, a breach of fiduciary duty claim may lie where it provides a remedy not otherwise available through other common law claims. *See Adobe Sys. Inc.*, 300 F. Supp. 3d at 726–27 (D. Md. 2018); *see also Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *6–7 (D. Md. Feb. 29, 2012) (limiting fiduciary duty claim based on agency principal relationship to injunctive relief and dismissing as to punitive and compensatory damages). The Defendants simply fail to address how this particular claim is necessary to provide any particular remedy they seek. The Practice, for example, does not address why the alleged breaches could not otherwise be pursued by traditional tort or contract claims. On this basis alone, the Court must grant Castillo's motion for summary judgment on the

counterclaim.

### ii. Retaliation Based on Counterclaim

However, granting summary judgment on the counterclaim does not necessarily mean that Castillo may proceed on her retaliation claim. *See, e.g.*, *Ergo v. Int'l Merch. Servs.*, 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007) (granting summary judgment on counterclaim and retaliation claim, reasoning the counterclaim was not baseless). Because the counterclaim, as pleaded and supported by record evidence, is not baseless, the retaliation claim fails as a matter of law.

The Court begins by noting that it had previously determined the counterclaim to be compulsory. ECF No. 36 at 5, 9–10. Several courts outside this District have reasoned that a compulsory counterclaim cannot be retaliatory unless the counterclaim itself is "totally baseless." *Houser v. Bridges of Ind., Inc.*, No. 2:10-cv-118-LJM-WGH, 2010 WL 2902718, *1 (S.D. Ind. July 20, 2010); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 474–75 (S.D.N.Y. 2008); *Orr v. James D. Julia, Inc.*, No. 07-51-B-W, 2008 WL 2605569, *16 (D. Me. June 27, 2008); *Ergo*, 519 F. Supp. 2d at 780–81. This is so because where a Court finds that a counterclaim is compulsory, it deems the claim as one arising out of the same transaction or occurrence as the subject matter of the Complaint, to be litigated in the same case or forfeited forever. *See Ergo*, 519 F. Supp. 2d at 780–81. In this context, it makes good sense to require the plaintiff to demonstrate that the counterclaim is "totally baseless" so as to avoid penalizing a defendant for bringing a claim that it was required to pursue so as to preserve the cause of action.

That said, Castillo cannot demonstrate the counterclaim, even if not compulsory, was baseless in law or fact. Castillo is simply incorrect that this cause of action is "unavailable" in Maryland. Rather "[t]here is no set rule denoting" when the claim may proceed," and so the court "must examine the facts of each particular case" to determine if the cause of action shall

lie. *Quality Sys., Inc.*, 132 F. Supp. 2d at 354. Thus, merely bringing a fiduciary duty claim does not render it "baseless" in law.

As to the factual predicate for the counterclaim, the record evidence indisputably shows that Castillo forged Urquhart's signature to order medical records for a family member, thereby enriching herself at Urquhart's expense. Castillo also diverted resources from the Practice to further Castillo's side business and other personal needs. Each of these incidents colorably implicate the duty of loyalty owed by an agent to the principle, and each equally support a breach of that loyalty. *See* Restatement, Employment Law § 8.01 (2014) (describing "misappropriating the employer's property" as a breach of the duty of loyalty). Accordingly, although the counterclaim may be factually thin and ultimately fail on summary judgment, this does not render the claim meritless. *See Ergo*, 519 F. Supp. 2d at 781 (describing "baseless" retaliatory claims as being "frivolous (and therefore sanctionable)"); *cf.* Neitzke v. Williams, 490 U.S. 319, 325 (1989) (complaint is "frivolous" under *in forma pauperis* statute "where it lacks an arguable basis in law or in fact" and includes "inarguable legal conclusions" or "fanciful factual allegations").

In sum, because Castillo cannot demonstrate that the counterclaim was baseless in law or fact, its filing cannot constitute an "adverse action" sufficient to support her retaliation claim. Summary judgment, therefore, must be granted in Defendants' favor on Count IV.

**IV.     Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Cross-Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. A separate Order follows.

9/30/2019                                                    /s/
Date                                                         Paula Xinis